IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DAVID ZAVALA,                          :
                                       :
            Plaintiff,                 :
     VS.                               :
                                       :      CIV. NO. 5:19-CV-00383-TES-CHW
COMMISSIONER TIMOTHY C.                :
WARD, *et al.*,                        :
                                       :
            Defendants.                :
_____        :

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff David Zavala, an inmate currently incarcerated at the United States

Penitentiary in Atlanta, Georgia, has filed a Complaint seeking relief pursuant to 42 U.S.C.

§ 1983 (ECF No. 1).   Plaintiff also seeks leave to proceed without prepayment of the

Court's filing fee (ECF Nos. 6, 9) and requests appointed counsel (ECF Nos. 2, 7).  For the

following reasons, Plaintiff's motions to proceed *in forma pauperis* are **GRANTED**, and

the following claims will proceed for further factual development: (1) excessive force

claims against Defendants Polite and Evans; (2) due process claims regarding the

restrictions on Plaintiff's confinement against Defendants Taylor, Polite, Sumpter, Toole,

Myrick, Goody, Ford, and Ward; (3) conditions-of-confinement claims against Defendants

Davis, Ball, Goody, Ford, Sumpter, Harper, Polite, Nopen, Toole, Taylor, Ward, Myrick,

and Cannon; (4) retaliation claims against Defendants Davis, Ford, Cannon, Polite,

Sumpter, Nopen, Harper, and Goody; and (5) medical treatment claims against Defendants

Goody, Ford, Cannon, Polite, Toole, Taylor, Ward, Ball, Sumpter, Myrick, Gore, and

Elaine. Plaintiff's motions for appointed counsel are **DENIED**, and it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## I.      Motions to Proceed *in Forma Pauperis*

28 U.S.C. § 1915 allows the district courts to authorize the commencement of a civil action without prepayment of the normally-required fees upon a showing that the plaintiff is indigent and financially unable to pay the filing fee.  A prisoner seeking to proceed *in forma pauperis* ("IFP") under this section must provide the district court with both (1) an affidavit in support of his claim of indigence and (2) a certified copy of his prison "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." § 1915(a)(1)-(2).

In this case, Plaintiff's pauper's affidavit and trust account statement show that he is currently unable to prepay the Court's filing fee.  Plaintiff's motions to proceed *in forma pauperis* (ECF Nos. 6, 9) are thus **GRANTED** and Plaintiff will be assessed an initial partial filing fee of $0.00.  Plaintiff, however, is still obligated to pay the full balance of the filing fee, in installments, as set forth in § 1915(b) and explained below.  It is accordingly requested that the **CLERK** forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.  The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if the Plaintiff's Complaint (or any part thereof) is dismissed prior to service.

A. Directions to Plaintiff's Custodian

It is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is further **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

B. Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. In the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. Collection from Plaintiff of any balance due on these payments by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint is subject to dismissal if he has the ability to make such payments and fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

3

## II.     Motions for Appointed Counsel

Plaintiff has also filed motions for appointment of counsel. Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel."   There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit.  *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam).   Appointment of counsel is a privilege that is justified only by exceptional circumstances.  *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).  In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claims and the complexity of the issues presented.  *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).  But "[t]he key" in determining whether appointed counsel is warranted "is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court."  *Nelson v. McLaughlin*, 608 F. App'x 904, 905 (11th Cir. 2015) (per curiam) (holding that court did not abuse its discretion in denying appointed counsel where prisoner "articulated his claims for relief in his complaint and filed several responsive pleadings and motions before the district court in which he accurately cited the essential facts, legal arguments, and relevant law").

In this case, Plaintiff has filed a complaint on a standard § 1983 form. The Court is required to review the Complaint to determine whether Plaintiff's allegations state a colorable legal claim.  This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel.   The facts stated in Plaintiff's Complaint are not complicated, the law governing Plaintiff's claims is neither novel nor complex, and Plaintiff has not had any difficulty communicating the essential

4

merits of his claims to the Court.  Plaintiff's motions to appoint counsel (ECF Nos. 2, 7) are accordingly **DENIED**.  If, however, it becomes apparent at some point later in these proceedings that counsel should be appointed in this case, after due consideration of the complexity of the issues raised or their novelty, the Court will entertain a renewed motion.

## III.   Preliminary Screening

### A. Standard of Review

In accordance with the PLRA, the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and

"claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.  *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

### B.  Factual Allegations and Plaintiff's Claims

Plaintiff's claims arise from his treatment in the Special Management Unit ("SMU") at the Georgia Diagnostic and Classification Prison in Jackson, Georgia.   Compl. 3, ECF No. 1.   As discussed in more detail below, Plaintiff contends that all Defendants violated

6

his constitutional rights in some way.[1]  As a result of these alleged constitutional violations, Plaintiff seeks injunctive relief, monetary damages, a jury trial, costs, and "any additional relief this Court deems just, proper, & equitable."  *Id.* at 20.

> 1.    *Excessive Force Claims*

Plaintiff first contends that Defendants Polite and Evans used excessive and unnecessary force during a cell shakedown on December 31, 2018.  Compl. 7, ECF No. 1.  Plaintiff states that Defendant Polite pushed him down and kicked, stomped, and stood on Plaintiff's head and face; Defendant Evans allegedly "repeatedly shocked" Plaintiff with a shock-shield, "leaving cuts over [Plaintiff's] chest & abdomen."  *Id.*  Force that is applied to a prisoner "maliciously and sadistically to cause harm" can violate the Eighth Amendment and give rise to claims under § 1983.  *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).  Plaintiff's allegations that Defendants Polite and Evans acted in this manner are sufficient to permit his excessive force claims against them to proceed for further factual development.

Plaintiff also contends that Defendants Ford and Taylor should be held responsible for the actions of Defendants Polite and Evans because they "approv[ed] these actions" and failed to "assur[e] things were compliant to policies & standard operating procedures."

---

[1]In his Complaint, Plaintiff contends that "all Defendants" have violated his constitutional rights, but he often fails to allege specific facts showing which Defendants took a particular action.  Thus, Plaintiff's Complaint has been liberally construed to raise claims only against those Defendants who are expressly mentioned in connection with each alleged violation. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

Compl. 18, ECF No. 1.  It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Rather, supervisors who did not personally participate in unconstitutional conduct can only be held liable under § 1983 if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).  A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Id.* (internal quotation marks omitted).

In this case, Plaintiff has failed to allege any basis for holding Defendants Ford and Taylor liable for their subordinates' use of excessive force.  Plaintiff's description of a single incident of excessive force is not enough to show a history of widespread abuse. *See, e.g., Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."); *see also Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (holding that "[a] single incident, or isolated incidents, do not ordinarily satisfy th[e] burden" of proving a supervisory liability

8

claim).  Plaintiff has also failed to allege the existence of an improper custom or policy promulgated by Defendants Ford and Taylor or that Defendants Ford and Taylor directed their subordinates to use excessive force or knew they would do so and failed to stop them. As such, any supervisory liability claims against Defendants Ford and Taylor related to the alleged use of force on December 31, 2018 are subject to dismissal.

>    2.    *Due Process Claims*

After the December 31, 2018 shakedown, Defendant Sumpter informed Plaintiff that "he was in trouble, that high ranking GDC officials ordered protocols" requiring Plaintiff to be escorted by at least five officers at all times and that a prison official with the rank of lieutenant or higher "must be present at all interactions" with Plaintiff.  Compl. 8, ECF No. 1.  Because of these restrictions, Plaintiff contends that he is often ignored in the SMU:  for example, he is consistently served cold food, or not served at all; he is not permitted to sanitize his cell; and he often goes for days or weeks without showers.  *Id.* at 8-9.  Plaintiff further states that he is provided limited out-of-cell recreation time and that when he is permitted to leave his cell,  he "is subject to very intrusive strip searches so invasive they are apparently done to discourage him from requesting & grieving about his out-of-cell time."  *Id.* at 11.  Plaintiff contends that Defendants Taylor, Polite, Sumpter, Toole, Myrick, Goody, Ford, and Ward ordered, approved, and/or implemented these restrictions on Plaintiff's confinement without due process.  *Id.* at 8, 17-18; *see generally* Attachs. 6-10 to Compl., ECF Nos. 1-6, 1-7, 1-8, 1-9, 1-10.

It is well-settled that the Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the process of law."  U.S.

Const. amend. XIV.  In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process.  *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

"Whether an inmate has a protected liberty interest that would entitle him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have <u>already</u> been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (emphasis in original)).  The Supreme Court, however, "has made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required." *Bass*, 170 F.3d at 1318. First, a prisoner is entitled to due process "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Jacoby*, 835 F.3d at 1346 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (alterations in original)).  Second, a prisoner is entitled to due process if a change in the prisoner's conditions of confinement "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.*  In this case, Plaintiff does not allege that his sentence was increased in any way by any alleged deprivation of due process.  Accordingly, Plaintiff must demonstrate that the denial of due process with respect to his increased restrictions caused him to suffer an "atypical and significant hardship." *Sandin*, 515 U.S. at 483.

10

As noted above, Plaintiff has alleged that he is not afforded even the limited freedoms that other SMU inmates receive.  Plaintiff also suggests that he has been confined to a cell that lacks the minimal comforts and amenities that other SMU cells have.  *See, e.g.,* Compl. 11-12, ECF No. 1.  For purposes of preliminary screening, Plaintiff has thus met his burden of alleging facts that show that the conditions of his confinement are "demonstrably harsher than the ordinary conditions of prison life."  *Jacoby*, 835 F.3d at 1347.  His due process claims against Defendants Taylor, Polite, Sumpter, Toole, Myrick, Goody, Ford, and Ward shall therefore proceed for further factual development.

### 3.    Conditions-of-Confinement Claims

Plaintiff next raises claims concerning the physical conditions of his confinement in the SMU.   While "the Constitution does not mandate comfortable prisons," a prisoner's claim that the conditions of his confinement constitute cruel and unusual punishment may state a claim for relief under the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."  *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  A prisoner must

also show that prison officials had the requisite state of mind, *i.e.*, that the officials knew of the excessive risk to inmate health or safety and disregarded that risk. *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999). Plaintiff's conditions-of-confinement claims are addressed as follows:

a.    <u>Exposure to Extreme Cold</u>

Plaintiff alleges that Defendant Davis left him naked in a bare and "frigid" cell immediately after the December 31, 2018 use of force incident for approximately forty hours and that Defendant Ball left him in a strip cell on March 4, 2019 for almost twenty-four hours in "frigid temperatures." Compl. 14, ECF No. 1. Plaintiff also alleges that Defendants Taylor, Ford, Polite, Sumpter, and Nopen "unnecessarily order[ed]" Plaintiff's confinement to the strip cell. *Id.* at 18. A prisoner may state a cognizable Eighth Amendment claim by alleging that prison officials have subjected him to extreme temperatures in his cell. *See, e.g., Bennett v. Chitwood*, 519 F. App'x 569, 574 (11th Cir. 2013) (per curiam). In evaluating such claims, the Court must "consider both the 'severity' and the 'duration' of the prisoner's exposure to extreme temperatures." *Id.* Construed liberally, Plaintiff's claims are not entirely frivolous. While the limited duration of Plaintiff's exposure to these conditions may ultimately warrant a finding that they were not sufficiently serious to implicate the Eighth Amendment, further factual development is warranted. *Cf. id.* (finding summary judgment appropriate where prisoner undergoing scabies treatment was required to remain nude for approximately 10.5 hours in temperatures "in the 50s," but was not deprived of clothing or bed linens overnight). Plaintiff's claims against Defendants Davis, Ball, Taylor, Ford, Polite, Sumpter, and Nopen

12

concerning Plaintiff's strip cell assignments shall therefore proceed for further factual development.

b. <u>Denial of Adequate Food</u>

Plaintiff next contends that he was repeatedly served cold, inedible food or that he was not served at all.  The Eighth Amendment requires prisons to provide inmates with "food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).   In order to establish an Eighth Amendment violation based on inadequate food, a prisoner "must prove deliberate indifference, meaning that a prison official must have known of and disregarded an objectively serious condition."  *Miles v. Guice*, 688 F. App'x 177, 179 (4th Cir. 2017) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).  While missing only a handful of meals is rarely objectively serious enough to rise to the level of a constitutional claim, Plaintiff has alleged that he is *routinely* deprived of adequate nutrition and has lost a significant amount of weight as a result.  Compl. 15, ECF No. 1.  These allegations are sufficient to show an objectively serious deprivation, at least for purposes of preliminary screening. *See, e.g., Strope v. Sebelius,* 189 F. App'x 763, 766 (10th Cir. 2006) (unpublished opinion) (reversing district court's dismissal of deprivation of food claim where prisoner alleged that between March 2005 and June 2005 his meals were "routinely spoiled" and caused him to be physically ill on at least one occasion).

Plaintiff must also show that some named Defendant was deliberately indifferent to these repeated deprivations of adequate food. Plaintiff has attached documents to his Complaint showing that he filed several grievances concerning his meals that were

acknowledged by Defendants Goody and/or Ford.  *See* Attachs. 6-9 to Compl, ECF Nos. 1-6, 1-7, 1-8, 1-9.  Plaintiff's Complaint thus suggests that despite knowing that Plaintiff was not being fed adequately, these Defendants took no action.  As such, Plaintiff's Eighth Amendment claims concerning the deprivation of food shall proceed against these two Defendants.

### c.   Denial of Personal Hygiene

Plaintiff next contends that prison officials have deprived him of regular showers. In addition, Plaintiff contends he is not permitted sufficient access to clippers for regular haircuts and shaves.  Plaintiff has pleaded facts associating Defendants Sumpter, Ball, Polite, and Davis with these deprivations.  Compl. 9-11, ECF No. 1; Attach. 25 to Compl., ECF No. 1-25.

The Eleventh Circuit has held that the occasional deprivation of personal hygiene is not sufficiently serious to constitute an Eighth Amendment violation.  *See, e.g., Ellis v. Pierce Cnty.*, 415 F. App'x 215, 218 (11th Cir. 2011) (per curiam) (denial of access to showers for up to fourteen days at a time that occurred "several times" over the course of fifteen months insufficient to state claim).  In this case, however, Plaintiff claims that he "very often . . . has endured 7-12 consecutive days without showers" and has only had the opportunity to shave "an estimated 3 times all year."  Compl. 11, ECF No. 1.  Plaintiff further contends he has suffered from physical consequences, including skin infections that he describes as staff-like, as a result of the deprivation of access to showers and clippers. *Id.*  Given these additional factual allegations, the Court cannot conclude that Plaintiff's claims are necessarily frivolous.  As such, Plaintiff's hygiene claims shall proceed against

14

Defendants Sumpter, Ball, Polite, and Davis.

> ### d.  Exposure to Human Waste

Plaintiff additionally alleges that he was rarely permitted to clean or sanitize his cell, and he was often exposed to human waste as a result.  Specifically, Plaintiff avers that Defendants Sumpter and Harper knowingly placed Plaintiff in a cell without a working toilet for "days" and that during this time he was forced to "urinate in the sink then defecate & send it out in styrafome [sic] trays."  Compl. 9-10, ECF No. 1.  In addition, Plaintiff contends that on March 5, 2019, Defendants Polite and Davis moved Plaintiff to a cell where feces "was smeared virtually everywhere . . . even on the ceiling" and gave Plaintiff "cups of pine scent & rags & told [him] to clean it up as best as he could."  *Id.* at 12.  On March 19, 2019, Plaintiff contends that Defendants Nopen and Davis forced him to sit at a table that had been sprayed with feces and kept him restrained to the table for over eight hours, until he urinated on himself.  *Id.* at 14.

The Eleventh Circuit has recognized that "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the eighth amendment."  *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  At this early stage of the litigation, the Court cannot say that Plaintiff's claims that he was repeatedly and intentionally exposed to human waste are entirely frivolous.  These claims shall therefore proceed against Defendants Sumpter, Harper, Polite, Davis, and Nopen.

e.   Deprivation of Out-of-Cell Time

Plaintiff next contends that although SMU inmates are generally entitled to be out of their cells at least four hours per day, he is "rarely" permitted this opportunity. Compl. 11, ECF No. 1. Plaintiff also alleges that for at least five months, he was not allowed to leave his cell at all. *Id.* These allegations are sufficient to warrant further factual development. *See, e.g., McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) (holding that district court erred by dismissing complaint where plaintiff alleged he had been confined in his cell for 23 ½ hours per day for several months).[2] Although it is not entirely clear which named Defendants knew about and were deliberately indifferent to Plaintiff's lack of out-of-cell activity, Plaintiff's Complaint suggests that Plaintiff complained about this condition to Defendants Toole, Taylor, Ward, and Myrick. Compl. 17, ECF No. 1. Plaintiff's claims concerning his out-of-cell time shall therefore proceed against these Defendants.

f.   Exposure to Paint Fumes

Plaintiff next avers that for some portion of his incarceration in the SMU, he was confined in a particularly restrictive cell behind a glass barrier. Compl. 12, ECF No. 1. During this time, Plaintiff was exposed to "intoxicating fumes" from a nearby "painting project." *Id.* Plaintiff contends that this exposure lasted approximately a month and caused him to suffer from "nausea, light-headedness, & severe migraines." *Id.* Plaintiff states that

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

he informed Defendants Harper, Polite, Cannon, Goody, and Ford that he was suffering from exposure to the fumes and requested to be moved out of the enclosed area, but to no avail. *Id.*; *see also* Attach. 15 to Compl. 1, ECF No. 15-1.

A prisoner may state an Eighth Amendment claim by alleging that prison officials acted with deliberate indifference in exposing the prisoner to a substance that poses an unreasonable risk of damage to the prisoner's health. *See, e.g., Helling*, 509 U.S. at 35 (exposure to environmental tobacco smoke). Plaintiff's allegations that Defendants Harper, Polite, Cannon, Goody, and Ford ignored Plaintiff's complaints concerning his exposure to paint fumes—and that Plaintiff suffered physical harm as a result—therefore cannot be summarily dismissed at this time. These claims shall proceed for further factual development.

### 4.   *Retaliation Claims*

Next, Plaintiff contends that several Defendants met together to discuss Plaintiff's grievance history and informed Plaintiff that "'they did not appreciate'" Plaintiff's grievances. Compl. 13, ECF No. 1. After this meeting, Defendants engaged in a "campaing [sic] of harassment" against Plaintiff. *Id.* at 14. Plaintiff also states that when he complained about the conditions of his confinement, he was moved to cells with even worse conditions, e.g., the cell without a working toilet and the cell covered in feces. *Id.* at 9-10. It thus appears that Plaintiff intends to state retaliation claims.

It is well-established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To prove a retaliation claim, an inmate

generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Plaintiff alleges facts suggesting that Defendants Davis, Ford, Cannon, Polite, Sumpter, Nopen, Harper, and Goody may have taken adverse actions against Plaintiff because he filed grievances or otherwise complained to them about the conditions of his confinement. *See, e.g.,* Compl. 19, ECF No. 1; *see also id.* at 13 (false disciplinary report issued by Harper; Goody refuses to investigate grievance and throws it out); *id.* (Ford and Polite ignore Plaintiff's complaints about paint fumes and other issues, telling Plaintiff "'he had gotten himself in this predicament'"); *id.* at 14 (Nopen and Davis restrain Plaintiff to feces-covered table for eight hours until Plaintiff urinated on himself); *id.* at 12 (Polite, Cannon, and Ford ignore grievances); *id.* at 9-10 (Sumpter fails to provide Plaintiff shower or toilet plunger). Plaintiff's retaliation claims against each of these Defendants shall therefore proceed for further factual development.

### 5.    *Denial of Access to Grievance Procedures*

Plaintiff also alleges that various Defendants have interfered with his ability to file grievances in the prison system. *See, e.g.,* Compl. 17, ECF No. 1. To the extent Plaintiff is alleging that this interference violates due process, he falls short of stating an actionable claim for relief. Prisoners have no constitutionally-protected liberty interest in accessing a prison's grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam). Thus, a prisoner's "allegations that prison officials failed to comply

with the prison's voluntary grievance procedures does not state a due process claim."
*Thomas v. Warner*, 237 F. App'x 435, 438 (11th Cir. 2007) (per curiam).  Plaintiff's due process claims concerning Defendants' alleged mishandling of his grievances are therefore subject to dismissal.

To the extent Plaintiff contends Defendants' interference with his grievances impeded his First Amendment right to seek redress from the courts, *see* Compl. 19, ECF No. 1, he has likewise failed to state an actionable claim.  "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."  *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)).  "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'"  *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  Plaintiff has not alleged that any interference with his grievances has affected his ability to raise his legal claims in court.  As such, Plaintiff has failed to state an actionable First Amendment claim regarding the alleged interference with his grievances, and any such claims should be dismissed.

### 6.  *Personal Property Claims*

Plaintiff next alleges that various Defendants either unintentionally or intentionally destroyed or lost his personal property.  To the extent these claims are related to Defendants' failure to provide Plaintiff with contact lenses to treat a medical condition,

these claims are properly construed as arising under the Eighth Amendment and are addressed at section III.B.7, *infra*.  To the extent Plaintiff seeks to raise an independent due process claim concerning these allegations, he has failed to do so.  Even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1).  The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.*  Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him.  Thus, any claims regarding the seizure or destruction of Plaintiff's personal property should also be dismissed.[3]

### 7.   *Inadequate Medical Treatment Claims*

Finally, Plaintiff appears to allege that prison officials failed to provide him with adequate medical care.  A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  "To show that a prison official

---

[3] At least some of the personal property that was confiscated may have been religious in nature. *See* Compl. 6, ECF No. 1 (mentioning a "Bible & other religious literature" and a "silver chain with cross").  It does not appear, however, that Plaintiff has attempted to set forth any claim that the seizure of these items violated his religious freedom rights.

acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  Plaintiff first alleges that he suffers from keratoconus, an eye condition that causes the cornea to become misshapen and causes significant losses in visual acuity. *See, e.g., Street v. Els*, No. 17-CV-00334-DRH, 2017 WL 1422430, at *2 (S.D. Ill. Apr. 19, 2017).  The condition can be treated by prescribing contact lenses that adjust to the changing shape of the cornea and may ultimately require corneal transplant. *Id.*  Plaintiff's allegation that he has been diagnosed with and is being treated for this condition— including undergoing one corneal transplant—is sufficient to demonstrate that he suffers from a serious medical need.

Plaintiff must also allege that Defendants were deliberately indifferent to this serious medical need.  Plaintiff alleges that he has repeatedly been denied optometry appointments and has failed to receive properly fitted and prescribed contact lenses. *See, e.g.,* Compl. 16, ECF No. 1.  As a result, Plaintiff contends that he is suffering from "significant[]" eye strain and losing his eyesight. *Id.*; *see also* Attach. 32 to Compl. 3, ECF

No. 32-1.  A liberal reading of Plaintiff's Complaint and the attachments thereto suggest that he complained directly to Defendants Goody, Ford, Cannon, Polite, Toole, Taylor, Ward, Ball, Sumpter, and Myrick about this problem.  *See* Compl. 6, 17, ECF No. 1; Attach. 18 to Compl. 1, ECF No. 1-18.  Plaintiff also alleges that medical personnel—presumably Defendants Gore and Elaine, the only Defendants identified as such in the Complaint—ignored repeated requests for medical attention.  *See, e.g.,* Compl. 16, ECF No. 1.  Plaintiff's Eighth Amendment claims concerning treatment of his keratoconus shall therefore proceed against these Defendants.

Plaintiff next alleges that he suffers from "severe neck & back pain" as a result of the December 31, 2018 use of force incident.  *See* Compl. 15, ECF No. 1.  Severe pain that is left untreated can constitute a serious medical need for Eighth Amendment purposes.  *See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("Under our case law, a reasonable jury could find that [prisoner's] severe pain and suffering constituted a serious medical need.").  Plaintiff states that he filed five medical requests, sent letters to Defendants Ford and Cannon, and had a friend call Defendant Cannon before he was able to obtain treatment for his pain.  Compl. 16, ECF No. 1.  As noted above, Plaintiff also indicates that Defendants Gore and Elaine ignored his requests for medical treatment.  *Id.*  On January 22, 2019, Plaintiff states that a doctor provided Plaintiff with "a shot on the thigh for pain," prescribed pain medication, and ordered x-rays.  *Id.*  Plaintiff's allegations that Defendants Ford, Cannon, Gore, and Elaine knew that Plaintiff was in "severe" pain but allegedly ignored Plaintiff's complaints for as many as three weeks cannot be

summarily dismissed.  Plaintiff's Eighth Amendment medical treatment claims concerning Plaintiff's pain shall therefore proceed against these Defendants.[4]

Plaintiff also contends that he has "mental health issues" that "continue to intensify."  Compl. 15, ECF No. 1.  Specifically, Plaintiff states that he has "hyper-sensitivity & extreme vigilance during staff interactions, anxiety & closurephobia [sic] in his cell to the point of panic attacks," as well as chronic sleeplessness, nightmares, "sudden rage, deep depression, & hopelessness to the point of suicidal ideations."  Compl. 15, ECF No. 1.  Plaintiff further alleges that medication to treat his depression and sleep issues were discontinued due to his eye condition.  *Id.*

Whether Plaintiff's mental health condition arises to the level of a serious medical need is unclear from the Complaint.  For example, Plaintiff concedes that the primary effect on his health has been physical, not mental, and he acknowledges that he is currently "on the mental health case load" and thus has some opportunity for treatment.  *Id.*  Plaintiff also fails to clearly allege which Defendants—if any—knew about his mental health conditions and were deliberately indifferent to them.  Although Plaintiff has attached a number of grievances to his Complaint, none of them directly complain about any concern

---

[4] In conjunction with his other claims, Plaintiff mentions that he has other physical problems, including a blister, constipation, heartburn, stomach cramps, "significant weight loss," rashes, skin infections, high blood pressure, migraine headaches, nausea, and light-headedness.  Compl. 14-15, ECF No. 1.  Plaintiff also states that he became "ill" after he was exposed to OC spray.  *Id.* at 16.  While these conditions or symptoms may show that Plaintiff suffered some physical harm as a result of other possible Eighth Amendment violations, Plaintiff has not pleaded specific facts that show that any of these conditions independently constitute "serious medical needs" and that any alleged failure to treat them arises to the level of a standalone constitutional violation.

about his lack of access to mental health treatment.[5]  Thus, even when it is construed liberally, the Complaint fails to state an actionable Eighth Amendment claim concerning Plaintiff's mental health, and any such claim should be dismissed without prejudice.

### IV.  Conclusion

In accordance with the foregoing, Plaintiff's motions to proceed *in forma pauperis* (ECF Nos. 6, 9) are **GRANTED**, and the following claims will proceed for further factual development: (1) excessive force claims against Defendants Polite and Evans; (2) due process claims regarding the restrictions on Plaintiff's confinement against Defendants Taylor, Polite, Sumpter, Toole, Myrick, Goody, Ford, and Ward; (3) conditions-of-confinement claims against Defendants Davis, Ball, Goody, Ford, Sumpter, Harper, Polite, Nopen, Toole, Taylor, Ward, Myrick, and Cannon; (4) retaliation claims against Defendants Davis, Ford, Cannon, Polite, Sumpter, Nopen, Harper, and Goody; and (5) Eighth Amendment medical treatment claims against Defendants Goody, Ford, Cannon, Polite, Toole, Taylor, Ward, Ball, Sumpter, Myrick, Gore, and Elaine.  Plaintiff's motions

---

[5] Only two of Plaintiff's thirty-plus exhibits even tangentially reference Plaintiff's mental health.  In a grievance filed in March of 2019, Plaintiff requested to be placed on the mental health case load because he had to "endure the lack of reading material and violation of rights," Attach. 12 to Compl. 1, ECF No. 12-1; Defendants apparently addressed this grievance because Plaintiff acknowledges he is currently on the mental health case load. Another grievance filed in June of 2019 states that Plaintiff has "considered suicide" because he is losing eyesight in his good eye due to prison officials' failure to provide him with the contact lenses prescribed to treat his keratoconus.  Attach. 21 to Compl. 1, ECF No. 1-21.  Plaintiff has not alleged any specific facts showing which Defendants were advised of Plaintiff's suicidal ideations or describing how those Defendants were deliberately indifferent to them.

for appointed counsel (ECF Nos. 2, 7) are **DENIED**, and it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Polite, Evans, Taylor, Sumpter, Toole, Myrick, Goody, Ford, Ward, Davis, Nopen, Ball, Cannon, Harper, Elaine, and Gore, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly

advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has

been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of

27

the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 2nd day of April, 2020.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge