**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| DAVID ZAVALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00383-TES-CHW |
| COMMISSIONER TIMOTHY C. WARD, ET AL | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS POLITE, TAYLOR, TOOLE, MYRICK, GOODY, FORD, WARD, DAVIS, BALL, NOPEN, GORE AND HARPER**

COME NOW, Defendants Polite, Taylor, Toole, Myrick, Goody, Ford, Ward, Davis, Ball, Nopen, Gore and Harper ("the Defendants"), by and through counsel, the Attorney General for the State of Georgia, and submit this memorandum of law in support of their contemporaneously-filed Motion to Dismiss.

**I.    PLAINTIFF'S ALLEGATIONS:**

On September 23, 2019, the Plaintiff David Zavala ("Zavala") filed his Complaint under 42 U.S.C. § 1983 alleging numerous constitutional violations regarding his incarceration at the Special Management Unit ("SMU") in Jackson, Georgia. (Dkt. No. 1). After a 28 U.S.C. § 1915 review of the Complaint, the Court sanctioned the following claims: (1) Polite and Evans used excessive force on the Plaintiff during a shakedown on December 31, 2018 (2) Taylor, Polite, Sumpter, Toole, Myrick, Goody, Ford, and Ward violated his due process rights by failing to ensure that he received the same limited freedoms as other inmates housed in the SMU in that he requires a five-man escort, is consistently served cold food, or not served at all, he is not

permitted to sanitize his cell, often goes days or weeks without showers, is provided limited out-of-cell recreation time, and is subject to very intrusive strip searches (3) Davis, Taylor, Ford, Polite, Sumpter and Nopen exposed him extreme cold by placing him in a strip cell on December 31, 2018 and Ball exposed him to frigid temperatures when placing him in a strip cell on March 4, 2019 (4) Goody and Ford failed to ensure that he was being adequately fed (5) Sumpter, Ball, Polite and Davis denied him of regular showers and sufficient access to the clippers for shaves and haircuts (6) Sumpter and Harper placed him in a cell without a working toilet for days (7) on March 5, 2019, Polite and Davis moved him to a cell where feces was smeared everywhere (8) on March 19, 2019, Nopen and Davis kept him restrained for 8 hours to a table that had been sprayed with feces (9) Toole, Taylor, Ward and Myrick rarely permitted him to leave his cell (10) in February and March of 2019, Harper, Polite, Cannon, Goody and Ford exposed him to excessive paint fumes (11) in retaliation for the Plaintiff filing grievances, Harper issued a false disciplinary report and Goody refused to investigate the grievance and throw it out (12) in retaliation for the Plaintiff filing grievances, Ford and Polite ignored his complaints about paint fumes and other issues (13) in retaliation for the Plaintiff filing grievances, Nopen and Davis restrained the Plaintiff to a feces covered table for 8 hours (14) in retaliation for the Plaintiff filing grievances, Polite, Cannon and Ford ignored his grievance (15) in retaliation for the Plaintiff filing grievances, Sumpter failed to provide the Plaintiff with a shower or a toilet plunger (16) Goody, Ford, Cannon, Polite, Toole, Taylor, Ward, Ball, Sumpter, Myrick, Gore and Elaine were failed to ensure that he received appropriate medical care for his eyes. (Dkt. No. 11; Dkt. No.16).

## II. ARGUMENT AND CITATION OF AUTHORITY:

### A. The Plaintiff Failed to Exhaust his Administrative Remedies Prior to Filing his Complaint:

The Prison Litigation Reform Act ("PLRA" or the "Act") requires an inmate to exhaust all available administrative remedies before filing federal claims:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility under such administrative remedies as are available are exhausted.

42 U.S.C. Section 1997e(a). The plain language of the PLRA "makes exhaustion a precondition to filing an action in federal court." *Leal v. Georgia Department of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001). Accordingly, "until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." *Id*. (quotation marks and citation omitted). See also *McKeithon v. Jackson*, No. 14-10492, 2015 U.S. App. LEXIS 5141, at *6 (11th Cir., March 31, 2015)("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case.")(citing *Meadows v. Johnson*, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's exhaustion requirement is meant to allow prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court," *Jones v. Brock*, 549 U.S. 199, 204 (2007), and demands compliance with an agency's deadlines and procedural rules. See *Woodford v. Ngo*, 548 U.S. 81, 84-85 and 90-91 (2006). Not only must a prisoner "exhaust" available administrative remedies, he must exhaust those remedies properly—meaning he must comply "with the system's critical procedural rules." *Id*. at 95. In Georgia, among other requirements, a prisoner must either file a timely grievance to begin the administrative process or seek leave to file an out-of-time grievance upon a showing of good

3

cause. *Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005); see also *Harper v. Jenkin, 179 F.3d 1311, 1312* (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Claims that have not been fully exhausted as required by the agency's rules cannot be brought into federal court and are to be dismissed. *Harper* at 1312.

Exhaustion is properly decided on a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). When deciding exhaustion, courts may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1376-77. Courts look first to the factual allegations of the parties; if they conflict, the plaintiff's version is taken as true and it is determined whether, or those facts, exhaustion occurred. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). If the complaint is not subject to dismissal at the first step, the court should resolve the disputed factual issues related to exhaustion. *Id*. see also *Bryant*, 530 F.3d at 1373-74 and 1376. The court should then decide whether under those findings, the prisoner has exhausted his available administrative remedies. *Turner*, 541 F. 3d at 1082.

1. The Georgia Department of Corrections Grievance Policy:

The grievance process is subject to explicit guidelines and is available to all inmates. Goody Aff., para. 5; Goody[1] Aff., Exs. "A" and "B"). Upon admission to GDC, all inmates receive an oral explanation (orientation) of the grievance process and an outline of the process in

---

[1] Johannes Goody has have employed by the Georgia Department of Corrections ("GDC") as a counselor at the Georgia Diagnostic and Classification Prison ("GDCP") and the Special Management Unit ("SMU") in Jackson, Georgia since 2017. (Goody Aff., para. 2). Before 2019, GDCP and the SMU were considered to be one single prison institution by the GDC. In 2019, the GDC separated GDCP and the SMU so that they became two different prisons. However, the grievance procedure at the SMU is still administered by GDCP staff. As a counselor at GDCP/SMU, Mr. Goody works with and am familiar with the GDC's grievance process and always follow its established procedures. (Goody Aff., para. 3).

their copy of the inmate Orientation Handbook. (Goody Aff., para. 6). Inmates may also review the entire SOP for the grievance process, which is located in the law library of each GDC facility. (Goody Aff., para. 7).

SOP 227.02 provide that inmates may grieve "any condition, policy, procedure, or action or lack thereof that affects the offender personally," other than those issues specifically excluded in the policy. (Goody Aff., para. 8; Good Aff.. Exhibit "A", Sec. IV.B.1 and Ex. "B", Sec. IV.B.1). The only issues specifically excluded by the grievance policy are matters that do not affect the offender personally, matters over which GDOC has no control (including parole decisions), disciplinary actions, involuntary assignments to administrative segregation, charges assessed for health care, transfers of offenders between institutions, and changes to housing assignments, program assignments or work assignments. (Goody Aff., para. 8; Goody Aff., Exhibit "A", Sec. IV.B2 and Exhibit "B", Sec. IV.B.2). There are separate review and appeal processes for disciplinary matters, involuntary assignments to administrative segregation, and charges assessed for health care. (Goody Aff., para. 9).

Exhaustion of the GDC grievance procedure requires completion of a two-step process: (1) filing an Original Grievance, which the Warden must respond to within 40 days; and (2) filing a Central Office Appeal to the Office of the Commissioner, which must be responded to within 100 days. (Goody Aff., para. 10; Goody Aff., Exhibit "A", Sec. IV.C and IV.D and Ex. "B", Sec. IV.C and IV.D). Original grievance forms are available in all living units and in the counselors' offices during business hours. Inmates in isolation and segregation areas are provided grievance forms upon request by staff assigned to those areas. (Goody Aff., para. 11).

To properly begin the grievance process, an inmate must file an Original Grievance no later than 10 calendar days from the date the offender knew, or should have known, of the facts

giving rise to the grievance. (Goody Aff., para. 12; Goody Aff., Exhibit "A", Sec. IV.C.1b-d and Ex. "B", Sec. IV.C.1b-d).  The Warden/Superintendent or his/her designee should reject the grievance is it raises more than one (1) issue/incident. (Goody Aff., para. 12; Goody Aff., Ex. 'A", Sec. IV.C.1.e.ii.4 and Ex. "B", Sec. IV.C.1.e.ii.4).

After completing the original Grievance Form, the inmate must sign the form and provide it to a counselor. (Goody Aff., para. 13; Goody Aff., Exhibit "A", Sec. IV.C.1 and Ex. "B", Sec. IV.C.1.).  Immediately upon receipt of a grievance, the counselor must give the inmate the receipt from the bottom of the grievance form. (Goody Aff., para. 13; Goody Aff., Ex. "A", Sec. IV.C.1.c and Ex. "B", Sec. IV.C.1.d).  The counselor must then forward the form to the Grievance Coordinator. (Goody Aff., para. 13; Goody Aff., Exhibit "A", Sec IV.C.1.e. and Ex. "B", Sec. IV.C.1.e). The Grievance Coordinator performs an initial screening of the grievance, in order to determine whether to accept it or recommend that the Warden reject it. (Goody Aff., para. 13; Goody Aff., Exhibit "A", Sec. IV.C.1.e and Ex. "B", Sec. IV.C.1.e).  If either the Grievance Coordinator or the Warden accepts the grievance, the Grievance Coordinator then appoints appropriate staff to investigate the inmate's complaint. (Goody Aff., para. 13; Goody Aff., Exhibit "A", Sec. IV.C.1.e and Ex. "B", Sec. IV.C.1.e).

After the investigation of the grievance has been completed, the Grievance Coordinator reviews the investigation and submits a recommended response to the Warden. (Goody Aff., para. 14; Goody Aff., Exhibit "A", Sec. IV.C.1.f and Ex. "B", Sec. IV.C.1.f). The Warden, or the Warden's designee, then reviews the grievance file and issues a decision on the grievance. (Goody Aff., para. 14; Goody Aff., Exhibit "A", Sec. IV.C.1.f and Ex. "B", Sec. IV.C.1.f.). The Warden, or the Warden's designee, has 40 calendar days from the date the offender filed the grievance to deliver his or her decision to the inmate. However, a one-time, 10-calendar-day

6

extension of this deadline may be granted prior to the expiration of the initial, 40-calendar-day deadline. (Goody Aff., para. 15; Goody Aff., Exhibit "A", Sec IV.C.1.g. and Ex. "B", Sec. IV.C.1.g).

An inmate may file a Central Office Appeal if (1) after the Warden, or his/her designee, renders a decision on the Original Grievance or (2) if the time allowed for the Warden's decision on the Original Grievance has expired without any decision being given to the inmate. (Goody Aff., para. 16; Goody Aff., Exhibit "A", Sec. IV.C.2 and Ex. "B", Sec. IV.C.2). An inmate who wishes to file a Central Office Appeal must do so within seven calendar days from the date he receives the response to the Original Grievance. (Goody Aff., para. 17; Goody Aff., Exhibit "A", Sec. IV.C.2 and Ex. "B", Sec. IV.C.2). If the time allowed for the Warden to respond to the Original Grievance has expired without the inmate receiving a response to the grievance, the inmate may file a Central Office Appeal, or, alternatively, the inmate may wait until he receives a decision on the Original Grievance, and then file a Central Office Appeal. (Goody Aff., para. 17; Goody Aff., Exhibit "A", Sec.; IV.C.2 and Ex. "B", Sec. IV.C.2). To file a Central Office Appeal the inmate must complete and sign the Central Office Appeal Form and provide it to his counselor. (Goody Aff., para. 18; Goody Aff., Exhibit "A", Sec IV.C.2 and Ex. "B", Sec. IV.C.2). The counselor must then sign and date the Central Office appeal form, give the inmate the receipt, and then provide the Central Office Appeal Form to the Grievance Coordinator, who must, in turn, forward it, along with other documents, to Central Office. (Goody Aff., para. 18; Goody Aff., Exhibit "A", Sec. IV.C.2 and Ex. "B", Sec. IV.C.2). The GDC Commissioner, or his/her designee, has 100 calendar days after receiving the appeal to deliver a decision to the inmate. (Goody Aff., para. 19; Goody Aff., Exhibit "A", Sec. IV.C.2 and Ex. "B", Sec. IV.C.2). This completes the grievance procedure. (Goody Aff., para. 19).

2. <u>Zavala's Grievance History:</u>

On January 9, 2019, Zavala filed Grievance Number 281509, in which he claimed that "on December 31, 2018, after an improper cell extraction, DWS Mr. Polite placed me on strip cell and packed my property without doing a proper inventory much less issuing an inventory form." On February 7, 2019, the Warden's office denied Grievance Number 281509, and Zavala did not appeal the Warden's denial of Grievance Number 281509 to the Central Office. (Goody Aff., para. 23; Goody Aff., Ex. "D").

On January 9, 2019, Zavala filed Grievance Number 281515, in which he claimed (1) that on December 31, 2018, he was subjected to an excessive of force during a cell extraction and (Ex. "E", pg. 5) (2) and that his constitutional rights had been violated in various ways, including the requirement of a five-man escort, not receiving hot meals if he is fed at all, not receiving a shower on January 4, 2019, not receiving cell sanitation since January 2, 2019, and not receiving daily recreational yard time. (Ex. "E", pg. 6). On January 23, 2019, Grievance Number 281515 was forwarded to the GDC Criminal Investigations Division for review, and the grievance was closed. (Goody Aff., para. 24; Goody Aff., Ex. "E").

Exhibit A-4 of Zavala's Complaint purports to be a grievance appeal receipt[2] that Mr. Goody signed on February 1, 2019 for Grievance Number 281515. (Goody Aff., para. 25; Goody Aff., Ex. "F"). However, Grievance Number 281515 was closed on January 23, 2019 when it was sent to the GDC Criminal Investigation Division. Mr. Goody did not receive a grievance

---

[2] When an inmate files a grievance or a grievance appeal, he is given at the time a grievance receipt or grievance appeal receipt from the counselor receiving the grievance or grievance appeal per the GDC Grievance Standard Operating Procedure. These grievance receipts and grievance appeal receipts are simply small pieces of paper that are torn off of the grievance form, filled out by the counselor and given to the inmate. However, inmates can and do fabricate false grievance receipts and grievance appeal receipts. (Goody Aff., para. 22).

8

appeal from Zavala for Grievance Number 281515, nor did Mr. Goody complete the grievance appeal receipt attached to Zavala's Complaint as Exhibit A-4. Had Zavala given Mr. Goody a grievance appeal for Grievance Number 281515 on or about February 1, 2019, Mr. Goody could not have forwarded it to the Central Appeals office because Grievance Number 281515 closed out on January 23, 2019. (Goody Aff., para. 25; Goody Aff., Exs. "E" and "F").

On January 28, 2019, Zavala filed Grievance Number 282680, in which he alleged that his constitutional rights were being violated while housed in the SMU in that he was denied hot meals, the right to shower, out of cell time, proper sanitation, the opportunity to use the clippers to shave, and the opportunity to receive medical care. On March 8, 2019, the Warden's office denied Grievance Number 282680, and Zavala did not appeal the Warden's denial of Grievance Number 282680 to the Central Office. (Goody Aff., para. 26; Goody Aff., Ex. "G").

Exhibit C-4 of Zavala's Complaint purports to be a grievance appeal receipt that Mr. Goody signed on March 18, 2019 for Grievance Number 282680. Mr. Goody did not receive a grievance appeal from Zavala for Grievance Number 282680, nor did Mr. Goody complete the grievance appeal receipt attached to Zavala's Complaint as Exhibit C-4. Had Zavala given Mr. Goody a grievance appeal for Grievance Number 282680 on or about March 18, 2019, Mr. Goody would have immediately forwarded it to the Central Appeals office for processing. (Goody Aff., para. 27; Goody Aff., Exs. "G" and "H").

On February 13, 2019, Zavala filed Grievance Number 283697, in which he alleged that his constitutional rights were being violated while housed in the SMU in that he required a five-man escort, and denied hot food, the opportunity to shower, out of cell time and cell sanitation. On April 15, 2019, the Warden's office denied Grievance Number 283697, and Zavala did not

9

appeal the Warden's denial of Grievance Number 283697 to the Central Office. (Goody Aff., para. 28; Goody Aff., Ex. "I").

Exhibit D-4 of Zavala's Complaint purports to be a grievance appeal receipt that Mr. Goody signed on April 1, 2019 for Grievance Number 283697. Mr. Goody did not receive a grievance appeal from Zavala for Grievance Number 283697, nor did Mr. Goody complete the grievance appeal receipt attached to Zavala's Complaint as Exhibit D-4. Had Zavala given Mr. Goody a grievance appeal for Grievance Number 283697 on April 1, 2019, Mr. Goody would have immediately forwarded the grievance appeal to the Central Office for processing. (Goody Aff., para. 29; Goody Aff., Exs. "I" and "J").

On March 28, 2019, Zavala filed Grievance Number 285957, in which he alleged that he had not yet received a response to Grievance Number 2815145 regarding the use of force and that he was still being denied out of cell time, cell sanitation and kiosk sessions. Zavala also claimed that "many more retaliatory actions have been taken on my person all year." On April 24, 2019, the Warden's office rejected Grievance Number 285957 on the grounds that it contained more than one issue/incident. On May 1, 2019, Zavala signed the grievance appeal for Grievance Number 285957, and Zavala's Grievance Appeal for Grievance Number 285957 was apparently received by a GDCP/SMU counselor on May 6, 2019. On August 13, 2019, the Central Office responded to Zavala's appeal by stating that the "A member of my staff has reviewed your grievance. This review revealed that you failed to follow the proper procedure for filing a formal grievance. Policy states that the complaint on the grievance form must be a single issue/incident. You have noted more than one issue. The grievance was rejected at the institutional level in accordance with policy. In addition, Grievance Number 281515 forwarded

10

to the Criminal Investigation Division for further review.  Therefore, this grievance is denied." (Goody Aff., para. 30; Goody Aff., Ex. "K").

On March 28, 2019, Zavala filed Grievance Number 285962, in which he alleged that he was being denied out of cell time, kiosk time, had to endure illness from paint from February 11, 2019 to March 12, 2019 and that he was moved to a cell covered in feces. On May 15, 2019, the Warden's office denied Grievance Number 285962, and Zavala did not appeal the Warden's denial of Grievance Number 285962 to the Central Office.  (Goody Aff., para. 31; Goody Aff., Ex. "L").

Exhibit F-4 to Zavala's Complaint purports to be a grievance appeal receipt that Mr. Goody signed on May 7, 2019 for Grievance Number 285962. Mr. Goody did not receive a grievance appeal from Zavala for Grievance Number 285962, nor did Mr. Goody complete the grievance appeal receipt attached to Zavala's Complaint as Exhibit F-4.  Had Zavala given Mr. Goody a grievance appeal for Grievance Number 285962 on May 7, 2019, Mr. Goody would have immediately forwarded the grievance appeal to the Central Office for processing.  (Goody Aff., para. 32; Goody Aff., Exs. "L" and "M").

On May 6, 2019, Zavala filed Grievance Number 288104, in which he alleged that he alleged that his personal property had been improperly seized and that "this is evidentially being done in retaliatory action for attempting to file previous grievances."  On July 1, 2019, the Warden's office rejected Grievance Number 288104 on the grounds that it was filed out of time, and Zavala did not appeal the Warden's denial of Grievance Number 288104 to the Central Office.  (Goody Aff., para. 33; Goody Aff., Ex. "N").  Exhibit G-4 of Zavala's Complaint purports to be a grievance appeal receipt signed by a GDCP counselor whose name cannot be

11

read on July 19, 2019 for Grievance Number 288104.  (Goody Aff., para. 34; Goody Aff., Ex. "O").

On June 13, 2019, Zavala filed Grievance Number 290298, in which he alleged that he was being denied his prescription eye contacts and being denied medical care for his eyes.  On July 12, 2019, the Warden's office denied Grievance Number 290298, and Zavala did not appeal the Warden's denial of Grievance Number 290298 to the Central Office.  (Goody Aff., para. 35; Goody Aff., Ex. "P").

Exhibit H-4 of Zavala's Complaint purports to be a grievance appeal receipt that was given to Zavala on July 19, 2019 for Grievance Number 290298. However, Zavala's exhibit H-4 does not have Grievance Number 290298 on it, nor is it signed by a GDCP counselor.  Mr. Goody did not receive a grievance appeal from Zavala for Grievance Number 290298, nor did Mr. Goody complete the grievance appeal receipt attached to his Complaint as Exhibit H-4.  Had Zavala given Mr. Goody a grievance appeal for Grievance Number 290298, Mr. Goody would have signed the grievance appeal form and immediately forwarded it to the Central Appeals office for processing.   (Goody Aff., para. 36; Goody Aff., Exs. "P" and "Q").

On August 9, 2018, Zavala filed Grievance Number 293815, in which he alleged that he was subjected to five-man escorts, very cold temperatures, inmates throwing feces and toxic smoke. On September 16, 2019, the Warden's office rejected Grievance Number 293815 on the grounds that it contained more than one issue/incident, and Zavala did appeal the Warden's rejection of Grievance Number 293815 to the Central Office.  (Goody Aff., para. 37; Goody Aff. Ex. "R").  Besides the Grievances discussion in herein, Zavala did not file any other grievances from October 5, 2018, the date on which he arrived at GDCP/SMU to September 23, 2019, the date on which he filed his lawsuit.  (Goody Aff., para. 38; Goody Aff. Ex. "C").

12

Exhibits I-1 through I-8 purport to be grievance receipts that Zavala gave to Mr. Goody in March, April and May of 2019 for which Mr. Goody allegedly failed to process his grievances. At no time did Mr. Goody ever receive a grievance or grievance appeal from Zavala and fail to immediately process it in accordance with the GDC grievance Standard Operating Procedure (Exs. "A" and "B"), including those purported grievance receipts attached to Zavala's Complaint as exhibits I-1 through I-8. (Goody Aff., para. 39; Goody Aff., Ex. "S").

3. Zavala's Unexhausted Claims:

Inmate Zavala arrived at GDCP/SMU on October 5, 2018 and filed his Complaint on September 23, 2019. (Goody Aff., para. 20; Dkt. No. 1). Though Zavala filed 9 grievances between October 5, 2018 and September 23, 2019, he only properly exhausted the grievance procedure for only one grievance[3] (Grievance Number 281515) during this relevant time frame. (Goody Aff., Ex. "C"-Plaintiff's Grievance History). In Grievance Number 281515, Zavala claimed (1) that on December 31, 2018, he was subjected to an excessive of force during a cell extraction and (2) and that his constitutional rights had been violated in various ways, including the requirement of a five-man escort, not receiving hot meals if he is fed at all, not receiving a shower on January 4, 2019, not receiving cell sanitation since January 2, 2019, and not receiving daily recreational yard time. On January 23, 2019, Grievance Number 281515 was forwarded to

---

[3] The Warden's office rejected Grievance Number 285957 on the grounds that it contained more than one issue/incident. Zavala appealed to the Central Office, which noted that "[t]he grievance was rejected at the institutional level in accordance with policy. In addition, Grievance Number 281515 forwarded to the Criminal Investigation Division for further review. Therefore, this grievance is denied." (Goody Aff., para. 30; Goody Aff., Ex. "K"). Because there was a procedural defect in Grievance number 285957 and it was actually denied based on that procedural defect without consideration of the merits, there was no exhaustion on Grievance Number 285957. See *Whatley v. Smith*, 898 F.3d 1072, 1085-86 (11th Cir. 2018) (holding that "prison officials explicitly rely on procedural defects at the administrative level if they wish to preserve them for purposes of exhaustion.").

13

the GDC Criminal Investigations Division for review, and the grievance was closed. (Goody Aff., para. 24; Goody Aff., Ex. "E").

Zavala submitted grievance receipts and grievance appeal receipts with his Complaint which purport to show that Mr. Goody received those receipts from Zavala and then failed to process them in accordance with policy, but Zavala's documentation is untrustworthy for several reasons. First, Mr. Goody has sworn that inmates can and do fabricate false grievance receipts and grievance appeal receipts and that at no time did he ever receive a grievance or grievance appeal from Zavala and fail to immediately process it in accordance with the GDC grievance Standard Operating Procedure (Goody Aff., paras. 22, 39).

Second, Zavala claims that on February 1, 2019, Mr. Goody gave him a grievance appeal form for Grievance Number 281515. (Goody Aff., Ex. "F"). However, that particular grievance was forwarded to the GDC Criminal Investigations Unit for review on January 23, 2019, thereby closing the grievance and making it ineligible for appealing to the Central Office[4]. (Goody Aff., paras. 24-25 and Exs. "E" and "F"). In sum, Zavala's completely unreasonable claim that Mr. Goody gave him a grievance appeal receipt for an unappealable grievance calls into question the veracity of his other allegations that Mr. Goody failed to process to other grievances. In addition, Mr. Goody personally accepted nine (9) initial grievances[5] that Zavala filed between

---

[4] Mr. Goody did not receive a grievance appeal from Zavala for Grievance Number 281515, nor did Mr. Goody complete the grievance appeal receipt attached to Zavala's Complaint as Exhibit A-4. Had Zavala given Mr. Goody a grievance appeal for Grievance Number 281515 on or about February 1, 2019, Mr. Goody could not have forwarded it to the Central Appeals office because Grievance Number 281515 closed out on January 23, 2019. (Goody Aff., para. 25; Goody Aff., Exs. "E" and "F").

[5] Grievance Number 281509 (Goody Aff., Ex. "D", pg. 5), Grievance Number 281515 (Goody Aff., Ex. "E", pg. 5), Grievance Number 282680 (Goody Aff., Ex. "G", pg. 5), Grievance Number 293697 (Goody Aff., Ex. "I", pg. 5), Grievance Number 285957 (Goody Aff., Ex. "K", pg. 7), Grievance Number 285962 (Goody Aff., Ex. "L", pg. 5), Grievance Number 288104

14

October 5, 2018 and September 23, 2019, which is not the expected standard of conduct for someone who allegedly completely disregarded the established procedures of SOP 227.02.

If Zavala only properly exhausted his administrative remedies as to his allegations in Grievance Number 281515, then the only claims he exhausted prior to the filing of this lawsuit would be those claims that (1) on December 31, 2018, he was subjected to an excessive of force during a cell extraction and (2) and that his constitutional rights had been violated in various ways, including the requirement of a five-man escort, not receiving hot meals if he is fed at all, not receiving a shower on January 4, 2019, not receiving cell sanitation since January 2, 2019, and not receiving daily recreational yard time. (Goody Aff., para. 24; Goody Aff., Ex. "E"). Zavala may have arguably exhausted his administrative remedies on his due process claims through the filing of Grievance Number 281515 through his suggestions that he was treated differently than other inmates. (Goody Aff., para. 24; Goody Aff., Ex. "E"). However, when Zavala filed Grievance Number 281515 on January 9, 2019, he did not allege that he was improperly exposed to extreme cold when placed in a strip cell on December 31, 2018, that he was exposed to frigid temperatures when placed in a strip cell on March 4, 2019, that he had been denied a working toilet for days, that on March 5, 2019 he was moved to a cell where feces was spread everywhere, that on March 19, 2019 he was kept restrained on a table sprayed with feces for 8 hours, that in February and March of 2019 he had been exposed to excessive paint fumes, had any official had taken any action against him in retaliation for him filing grievances or that he was being denied medical care for anything, include his eyes. (Goody Aff., para. 24; Goody Aff., Ex. "E").

---

(Goody Aff., Ex. "N", pg. 5). Grievance Number 290298 (Goody Aff., Ex. "P", pg. 5) and Grievance Number 293815 (Goody Aff., Ex. "R", pg. 5).

15

Because Zavala did not exhaust his administrative remedies on (1) his retaliation claims against Harper, Goody, Ford, Polite Nopen, Davis, Cannon, and Sumpter, (2) his deliberate indifference to serious medical needs claims against Goody, Ford, Cannon, Polite, Toole, Taylor, Ward, Ball, Sumpter, Myrick, Gore and Elaine, (3) his conditions of confinement claim that Davis, Taylor, Ford, Polite, Sumpter and Nopen exposed him to extreme cold when placing him in a strip cell on December 31, 2018 (4) his condition of confinement claim that Ball exposed him to frigid temperatures when placing him a strip cell on March 4, 2019 (5) his condition of confinement claim that Sumpter and Harper placed him in a cell without a working toilet for seven days (6) his condition of confinement claim that on March 5, 2019, Polite and Davis moved him to cell where feces was spread everywhere (7) his condition of confinement claim that on March 19, 2019, Nopen and Davis kept him restrained for 8 hours on a table that was spread with feces (8) his condition of confinement claim that in February and March of 2019, Harper, Polite, Cannon, Goody and Ford exposed him to excessive paint fumes prior to the filing of his Complaint, these unexhausted[6] claims should be dismissed.

### III. CONCLUSION:

For all the foregoing reasons, the Defendants pray that their Motion to Dismiss be granted.

---

[6] As noted above, it is arguable that Zavala did not adequately state a due process claim in Grievance Number 281515, and the Defendants request that the Court consider dismissing his due process claims as well.

Respectfully submitted this the 4th day of June, 2020.

                                                        CHRISTOPER M. CARR 112505
                                                        Attorney General
                                                        KATHLEEN M. PACIOUS 558555
                                                        Deputy Attorney General
                                                        /s/Andrew M. Magruder
                                                        ANDREW M. MAGRUDER     465710
                                                        Special Assistant Attorney General

Andrew M. Magruder
2 George C. Wilson Court
Augusta, Georgia 30909
(706) 737-0771
amm@wmssd.net

17

CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed **BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANTS POLITE, TAYLOR, TOOLE, MYRICK, GOODY, FORD, WARD, DAVIS, BALL, NOPEN, GORE AND HARPER** with the Clerk of Court using the CM/ECF system.  I further certify that today I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**DAVID ZAVALA**
REG01574-120
ATLANTA
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 150160
ATLANTA, GA 30315

This the 4th day of June, 2020.

s/Andrew M. Magruder
Georgia Bar No. 465710
Special Assistant Attorney General
2 George C. Wilson Court
Augusta, Georgia 30909
(706) 737-0771
amm@wmssd.net