IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DAVID ZAVALA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:19-cv-383 (TES) (CHW) |
| | : | |
| TIMOTHY C. WARD, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| _____ | : | |

### REPORT AND RECOMMENDATION

Before the Court are motions to dismiss filed on behalf of Defendants Ball, Davis, Ford, Goody, Gore, Harper, Myrick, Nopen, Polite, Taylor, Toole and Ward (Doc. 37), Defendants Cannon and Sumpter (Doc. 50), and by Defendant Wagy. (Doc. 68). Because Plaintiff failed properly to exhaust his administrative remedies before commencing this action, it is **RECOMMENDED** that the Defendants' motions be **GRANTED**, and that this action in its entirety be **DISMISSED without prejudice** for failure to exhaust.

### BACKGROUND, PENDING MOTIONS, AND DEFENDANT EVANS

Plaintiff David Zavala, a prisoner, commenced this Section 1983 action in September 2019. At issue are five categories of claims. First, Plaintiff sues over an alleged use of excessive force by Defendants Polite and Evans during a "shakedown" on December 31, 2018. Second, Plaintiff challenges on due process grounds certain *ad hoc* rules pursuant to which Plaintiff contends he was required to be escorted by five staff members upon leaving his cell, and to have a correctional officer of lieutenant grade or higher present whenever the "tray flap" to Plaintiff's cell door was opened. According to Plaintiff, these rules resulted in missed meals and showers, and in the loss of out-of-cell recreational time.

1

Third, Plaintiff directly complains of a variety of conditions — lack of adequate clothing and food, exposure to cold and unsanitary conditions, and exposure to paint fumes — associated with his prior confinement within the special management unit of the Georgia Diagnostic and Classification Prison. Fourth, Plaintiff sues over alleged retaliation for his use of the prison grievance system. Fifth and finally, Plaintiff raises claims of inadequate medical care relating to neck and back pain, and to keratoconus, an eye condition.

As discussed below, the record shows that Plaintiff failed properly to exhaust his administrative remedies for all five categories of claims he seeks to raise in this action. For that reason, it is recommended that the Defendants' motions to dismiss be granted, and that Plaintiff's claims be dismissed without prejudice for failure to exhaust. It is further **ORDERED** that Defendant Wagy's motion to stay discovery (Doc. 69) is **DENIED** as moot. Plaintiff's successive motion to appoint counsel (Doc. 67) is additionally **DENIED**, for reasons previously explained. *See* (Doc. 11, pp. 4–5).

A dismissal of Plaintiff's claims against Defendant Evans is also warranted for two reasons. First, the Court has not been able to locate Defendant Evans for service based on the information provided by Plaintiff, *see* (Doc. 20), and at this stage in the proceedings, a dismissal is warranted under Rule 4(m) of the Federal Rules of Civil Procedure, which sets a 90-day service deadline. Second, Evans's dismissal is also warranted on exhaustion grounds. Although Defendant Evans is not now before the Court, the below grievance analysis applies with equal force to Defendant Evans. That is, because the record shows that Plaintiff failed to exhaust any grievance relating to his five categories of claims in this action, it is clear that Plaintiff's claims against Defendant Evans should also be dismissed for failure to exhaust. *See, e.g.*, *Anderson v. Donald*, 261 F. App'x 254, 255 (11th Cir. 2008) (explaining that failure to exhaust administrative remedies is "tantamount to

… fail[ure] to state a claim upon which relief may be granted"). *See also* 42 U.S.C. § 1997(e)(c)(1) ("The court shall on its own motion … dismiss any action brought with respect to prison conditions under section 1983 … if the court is satisfied that the action is frivolous, malicious [or] fails to state a claim upon which relief can be granted").

## THE EXHAUSTION REQUIREMENT

The Prison Litigation Reform Act or PLRA requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal-court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's asserted failure to exhaust. A reviewing Court first:

> [L]ooks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Turner*, 541 F.3d at 1082–83.

Second, if the Complaint is not dismissed under step one, the Court:

> [P]roceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion …. Once the court makes findings on the disputed issues of

3

fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.*

## AVAILABLE REMEDIES

The grievance procedure applicable in this case is set by Georgia Department of Corrections Standard Operating Procedure No. 227.02. (Doc. 37-3) (February 26, 2018); (Doc. 37-4) (May 10, 2019). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within ten days of the grievable issue. (Doc. 37-3, p. 7; Doc. 37-4, p. 8). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (Doc. 37-3, pp. 7–8; Doc. 37-4, p. 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (Doc. 37-3, p. 10; Doc. 37-4, p. 11).

On either the expiration of the response period or on the prisoner's receipt of a response, the prisoner must next proceed to step two by filing a "central office appeal" within seven days. (Doc. 37-3, p. 11; Doc. 37-4, p. 14). The grievance procedure then contemplates a 120-day period in which the Warden may give a response. (Doc. 37-3, p. 12; Doc. 37-4, p. 15).

## ANALYSIS

**(1) Excessive Force**

Plaintiff first alleges that on December 31, 2018, correctional officers performed a "shakedown" to find and confiscate a cellphone that Plaintiff wrongfully possessed. During this shakedown, Defendants Polite and Evans allegedly kicked and stomped on Plaintiff's "head/face," and shocked Plaintiff while he was laying incapacitated on the floor. (Doc. 1, p. 7).

The parties agree that grievance number 281515, filed in January 2019, governs this alleged excessive force event. In that grievance, Plaintiff states that Defendant "Polite entered my cell and

4

assaulted me." (Doc. 37-7, p. 5). A different document further shows that due to the nature of Plaintiff's allegations, the matter was referred to the Correctional Criminal Investigations Division (CID) for investigation. (Doc. 37-7, p. 1). The grievance also describes many additional issues, however, including: deliberate indifference by correctional officers to Plaintiff's ensuing neck and back pain; complaints regarding rules for escorting Plaintiff, and for opening his tray flap; cold meals; lack of showers; lack of recreation time; poor cell sanitation; lack of access to a legal kiosk; and an inability to contact family. (Doc. 37-7, pp. 5–6). Had Plaintiff properly filed grievance number 281515, then Plaintiff would have exhausted his administrative remedies under a policy provision that contemplates a referral to CID as "effectively clos[ing] the grievance." (Doc. 37-3, p. 11; Doc. 37-4, p. 12). *See also White v. Staten*, 672 F. App'x 919, 921–22 (11th Cir. 2016) ("a prisoner exhausts his remedies under the SOP once he properly submits a grievance alleging sexual assault or excessive force because 'such actions automatically end the grievance process'").

Plaintiff did not, however, properly file grievance number 281515 at the original grievance level because Plaintiff violated the single-issue rule for grievances.[1] *See* (Doc. 37-3, p. 8; Doc. 37-4, p. 9) ("The Warden/Superintendent or designee should reject the grievance … if it: … Raises more than one (1) issue/incident"). A notice for "Rejected Grievance" designated "GR# 281515" lists, in bold typeface, "more than one issue per grievance" as the basis for grievance number 281515's rejection. (Doc. 37-7, p. 3). Further, the applicable grievance procedure expressly contemplates the referral of matters alleged in rejected grievances to the CID. *See* (Doc. 37-4, p. 12) ("Although the grievance has been rejected pursuant to policy guidelines, an investigation [may be] warranted due to the nature of the allegation").

---

[1] *See Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (addressing a comparable Florida prison grievance rule mandating that "[e]ach grievance must address only one issue or complaint") (internal quotations omitted). *See also Geter v. Baldwin State Prison*, 974 F.3d 1348, 1353 (11th Cir. 2020) ("Geter had failed to comply with the single-issue grievance rule and thus had not properly exhausted his administrative remedies").

The record thus evinces that Plaintiff's grievance number 281515 was both rejected for violating the single-issue rule and also referred to the CID for an excessive force inquiry. In light of this fact, the parties' two factual disputes are immaterial. Plaintiff cites a clerical error, later corrected, in the CID referral form, but this clerical error has no bearing on Plaintiff's violation of the single-issue rule. *Cf.* (Doc. 37-7, p. 2) (listing grievance no. 2815145) *with* (Doc. 37-7, p. 1) (listing grievance no. 281515). Similarly, the parties dispute whether Plaintiff fabricated a receipt for a grievance appeal, but again, Plaintiff's error was in not following the single-issue rule at the original grievance level, and in any event, due to the CID referral, Plaintiff would not have been required to appeal grievance number 281515 in order to exhaust his excessive force claim. Hence, for both reasons, the issue of receipt fabrication is not material to this grievance.

In summary, the Court need not reach *Turner*'s second step of review because the record shows that Plaintiff violated the single-issue rule, and thereby failed to properly exhaust his excessive force claim through grievance number 281515. For that reason, it is recommended that Plaintiff's excessive force claim be dismissed without prejudice for failure to exhaust.

**(2) Due Process**[2]

Three prison grievances touched on factual matters relevant to Plaintiff's due process claims in this action. First, as discussed above, Plaintiff's grievance number 281515 described certain *ad hoc* rules pursuant to which Plaintiff was required to be escorted by five officers whenever leaving his cell, and pursuant to which a lieutenant grade or higher officer was required to be present when the "tray flap" to Plaintiff's cell door was opened. By Plaintiff's account, these

---

[2] In a single–sentence footnote, the Defendants imply that Plaintiff may not have provided sufficient factual notice to exhaust his due process claim through grievance number 281515. (Doc. 37-1, p. 16, n. 6). Plaintiff's grievance expressly references rules relating to escort and to the opening of his tray flap, and hence, the grievance appears to provide sufficient factual notice. *See* (Doc. 37-7, p. 6). As a formal matter, though, this Recommendation declines to consider the Defendants' undeveloped argument.

rules caused him to miss meals and showers and to forfeit recreational time. As discussed above, though, grievance number 281515 was not properly exhausted under *Turner*'s first step of review because it violated the single-issue rule.

A similar analysis applies to grievance number 293815. (Doc. 37-20, p. 5). Although this grievance was not similarly referred to the CID for an excessive force inquiry, the record shows that the grievance was rejected for violating the single-issue rule because it complained of both due process issues as well as a host of other conditions of confinement issues. (Doc. 37-20, pp. 1–2). Based on this violation of the prison grievance procedure, and specifically the single-issue rule, grievance number 293815 also was not properly exhausted at *Turner*'s first step of review regardless of whether Plaintiff made any attempt to appeal.

Third and finally, Plaintiff's grievance number 283697 also touched on issues relating to Plaintiff's due process claim. (Doc. 37-11, pp. 5–6). The record shows that this grievance, filed on February 13, 2019, was denied on the merits in mid-April 2019, and that it was not rejected pursuant to the single-issue rule. (Doc. 37-11, p. 1). Additionally, this grievance did not result in a referral to the CID for an excessive force inquiry. Accordingly, the ordinary, two-step grievance process applied, and hence, as to grievance number 283697, Plaintiff's appellate efforts are material to the exhaustion analysis.

At *Turner*'s first step of review, Plaintiff cites an attachment to his complaint that purports to be a receipt for a central office appeal regarding grievance number 283697, with a date of April 1, 2019. (Doc. 1-11, p. 1). The receipt bears what appears to be the signature of Johannes Goody, a grievance counselor at the Georgia Diagnostic and Classification Prison. At *Turner*'s first step, the Court must accept Plaintiff's representations as true and construe the record in his favor. At this first step of review, therefore, the record supports the finding that Plaintiff

commenced a timely appeal after the expiration of the 40-day response period to his original grievance, and that Plaintiff never received any appellate response. Accordingly, once the 120-day response period expired — around August 2019, before the commencement of this action in September 2019 — Plaintiff fully exhausted grievance number 283697.

At *Turner*'s second step of review, two evidentiary sources support the different finding that Plaintiff did not, in fact, file or attempt to file a central office appeal from the denial of his original grievance number 283697. First, Plaintiff's grievance history displays the status of Plaintiff's grievance number 283697 as "denied," as opposed to "appeal denied" — as with, for example, grievance number 285957, discussed below. (Doc. 37-5, p. 1). Plaintiff's grievance history thus suggests that the central office appeal process was available to Plaintiff, but that Plaintiff simply did not exercise that process for grievance number 283697.

Second, and more importantly, Officer Goody has provided the Court with a declaration disclaiming his purported signature on Plaintiff's receipt form. (Goody Decl., Doc. 37-2, ¶ 29) ("I did not receive a grievance appeal from Zavala for Grievance Number 283697, nor did I complete the grievance appeal receipt attached to his Complaint"). Officer Goody also affirms that "[h]ad Zavala given me a grievance appeal for Grievance Number 283697 on April 1, 2019, I would have immediately forwarded it to the Central Office for processing. (*Id.*). These statements by Officer Goody are facially credible, and nothing in the record gives cause to discount the officer's credibility. Accordingly, it is recommended that the Court find, at *Turner*'s second step, that Plaintiff failed to file a central office appeal regarding grievance number 283697, and thereby failed to exhaust his due process claim through that grievance.

In summary, because Plaintiff failed to exhaust his due process claims through his three relevant grievances — grievance numbers 281515, 293815, and 283697 — it is recommended that Plaintiff's due process claims be dismissed without prejudice for failure to exhaust.

**(3) Conditions of Confinement**

Four grievances are potentially relevant to Plaintiff's conditions of confinement claims in this action, and as to two of those grievances, numbers 282680 (Doc. 37-9, pp. 5–6) and 285962 (Doc. 37-14, p. 5), precisely the same analysis applies. The record shows that these grievances were denied at the original grievance level, and the parties now dispute whether Plaintiff attempted to appeal. Plaintiff cites purported central office appeal receipts (Doc. 1-7, Doc. 1-17), and under *Turner*'s first step, the Court must construe these documents in Plaintiff's favor and conclude that Plaintiff fully exhausted the ordinary, two-step process. At *Turner*'s second step, though, Officer Goody's conflicting declaration credibly indicates that Plaintiff's grievance receipts are fabrications. *See* (Goody Decl., Doc. 37-2, ¶¶ 27, 32). Based on Officer Goody's declaration, and at *Turner*'s second step of review, it is recommended that the Court find that Plaintiff failed to appeal from grievance numbers 282680 and 285962, and therefore, that Plaintiff failed to exhaust his conditions of confinement claims through those grievances.

The two remaining grievances numbered 285957 (Doc. 37-13, p. 7) and 293815 (Doc. 37-20, p. 5), both were rejected at the original grievance level for violating the single-issue rule. *See* (Doc. 37-13, p. 5; Doc. 37-20, p. 1). As a result, and as with grievance number 281515 (relating to Plaintiff's excessive force claim), these grievances were not properly filed at the original grievance level, and hence they cannot work exhaustion under *Turner*'s first step of review.

Additionally, and as again with grievance number 281515, Plaintiff's appellate efforts are not material to the exhaustion inquiry regarding grievance numbers 285957 and 293815. The

parties in fact agree that Plaintiff appealed grievance number 285957, and because that grievance was not referred to the CID, an appellate response is available. The response reiterates that Plaintiff failed to follow the single-issue rule, and therefore cannot have exhausted his conditions of confinement claims through grievance number 285957. *See* (Doc. 37-13, p. 1).

Regarding grievance number 293815, the parties dispute whether Plaintiff took steps to file a central office appeal. Plaintiff cites a purported appeal receipt and Officer Goody disputes its authenticity (Goody Decl., Doc. 37-2, ¶ 37), but again, the dispute is not material. Even if Plaintiff filed a central office appeal, there is no indication that a response was provided, and more to the point, there is no indication that Plaintiff's violation of the single-issue rule was ever waived. As a result, and at *Turner*'s first step of review, Plaintiff failed properly to exhaust grievance number 293815 at the original grievance level by failing to comply with the single-issue rule.

In summary, Plaintiff failed to exhaust his conditions of confinement claims through any of the four relevant grievances — grievance numbers 282680, 285962, 285957, and 293815 — and it is therefore recommended that Plaintiff's conditions of confinement claims be dismissed without prejudice for failure to exhaust.

**(4) Retaliation**

Only one grievance, grievance number 288104 (Doc. 37-16, p. 5), relates to Plaintiff's claim that he suffered retaliation in violation of the First Amendment for resorting to the prison grievance system. That grievance, however, was rejected at the original grievance level for being filed out of time, *see* (Doc. 37-16, p. 2), and Plaintiff gives no explanation for the untimeliness. Additionally, the grievance plainly appears to fall without the applicable 10-day window[3] because

---

[3] *See* (Doc. 37-3, p. 7; Doc. 37-4, p. 8) ("The complaint … must be submitted no later than ten (10) Calendar Days from the date the Offender knew, or should have known, of the facts giving rise to the grievance").

it asserts, as the principal form of retaliation, that "my property was transferred over a month ago." (Doc. 37-16, p. 5). As a result, the record supports the finding, at *Turner*'s first step of review, that Plaintiff failed to properly exhaust grievance number 288104.

Moreover, even if Plaintiff could demonstrate that his original grievance was timely filed, the record would nonetheless support the finding, at *Turner*'s second step of review, that Plaintiff failed to appeal grievance number 288104, and thereby failed to exhaust in that different way. As with Plaintiff's other grievances, Officer Goody's credible declaration supports the conclusion that Plaintiff simply failed to file a central office appeal. (Goody Decl., Doc. 37-2, ¶ 33). Based on Officer Goody's declaration, it is recommended that the Court alternatively find that Plaintiff also failed to exhaust grievance number 288104 by failing to file a central office appeal.

In summary, because Plaintiff filed grievance number 288104 out of time, and because, additionally, Plaintiff failed to appeal that grievance, it is recommended that Plaintiff's retaliation claims be dismissed without prejudice for failure to exhaust.

**(5) Denial of Medical Care**

Three grievances relate to Plaintiff's claims of deliberate indifference to a variety of medical needs, including eye damage from keratoconus, lack of treatment or access to "sick calls" for physical injuries suffered during the alleged December 2018 excessive force event, and certain other, vague injuries caused by the inhalation of paint fumes. Those grievances are numbered 282680 (Doc. 37-9, pp. 5–6), 285962 (Doc. 37-14, p. 5), and 290298 (Doc. 37-18, p. 5).

The first two grievances previously were addressed in relation to Plaintiff's conditions of confinement claims. For the reasons there explained, it is again recommended that the Court find, at *Turner*'s second step of review, that Plaintiff failed to appeal from either grievance. That finding flows from Officer Goody's credible declaration that Plaintiff did not attempt to file a central office

appeal regarding these grievances, both of which were denied at the original grievance level. *See* (Goody Decl., Doc. 37-2, ¶¶ 27, 32). Officer Goody's declaration further supports the finding that Plaintiff's purported grievance receipts (Doc. 1-7, Doc. 1-17) are in fact fabrications. Accordingly, it is recommended the Court find that Plaintiff did not exhaust his denial of medical care claims through grievance numbers 282680 and 285962.

For precisely the same reason, Plaintiff also failed to satisfy the exhaustion requirement regarding his remaining grievance, grievance number 290298. (Doc. 37-18, p. 5). Although Plaintiff cites a purported receipt for his attempt to file a central office appeal, that receipt does not bear the signature of Officer Goody or any other grievance counselor. *See* (Doc. 1-23, p. 1). In his declaration to the Court, Officer Goody states that Plaintiff simply "did not appeal the Warden's denial of Grievance Number 290298. (Goody Decl., Doc. 37-2, ¶ 35). Officer Goody's declaration further indicates that Plaintiff made no attempt to file any central office appeal. The declaration states that Officer Goody "did not receive a grievance appeal from Zavala for Grievance Number 290298, nor did I complete the grievance appeal receipt attached to his Complaint as Exhibit H-2." (*Id.* ¶ 36). Officer Goody further states that as with grievance number 285957, which Plaintiff was able to appeal, "[h]ad Zavala given me a grievance appeal for Grievance Number 290298, I would have signed the grievance appeal form and immediately forwarded it to the Central Appeals office for processing." (*Id.*).

Here once again, on the basis of Officer Goody's credible affidavit, it is recommended that the Court find at *Turner*'s second step of review that Plaintiff failed to exhaust grievance number 290298 because he failed to appeal, and hence failed to exhaust the ordinary, two-step grievance process. Accordingly, because Plaintiff exhausted none of the three grievances relating to his

denial of medical care claims — grievance numbers 282680, 285962, and 290298 — it is recommended that those claims be dismissed without prejudice for failure to exhaust.

## CONCLUSION

For the reasons discussed herein, the record shows that Plaintiff failed properly to exhaust all of the eight grievances potentially relevant to his five categories of claims in this action — grievance numbers 281515, 293815, 283697, 282680, 285962, 285957, 288104, and 290298. As to some of these grievances, the record shows that Plaintiff failed to comply with either the single-issue rule or with the ten-day original grievance deadline. Regarding other grievances, the credible declaration of Officer Johannes Goody supports the finding that Plaintiff failed to commence appellate proceedings by filing a central office appeal.

Accordingly, because Plaintiff exhausted none of the claims he raises in this action, it is **RECOMMENDED** that the Court **GRANT** the pending motions to dismiss (Docs. 37, 50, 68), and **DISMISS without prejudice** this action in its entirety based upon Plaintiff's failure to exhaust. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for

failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 5th day of February, 2021.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
